1

2

3

4

5

6

7

8

9                IN THE UNITED STATES DISTRICT COURT

10                    FOR THE DISTRICT OF OREGON

11   COLLEGENET, INC., a Delaware  )
     corporation,                  )
12                                 )
                      Plaintiff,   )   Nos. CV-02-484-HU (LEAD CASE)
13                                 )         CV-02-1359-HU
          v.                       )
14                                 )
     APPLYYOURSELF, INC., a        )   OPINION & ORDER
15   Delaware corporation,         )
                                   )
16                    Defendant.   )
                                   )
17   ─────────────────────────────

18

19   John D. Vandenberg
     Scott E. Davis
     Michael N. Zachary
20   KLARQUIST SPARKMAN, LLP
     121 S.W. Salmon Street, Suite 1600
21   Portland, Oregon 97204

22   Robert A. Shlacter
     STOLL STOLL BERNE LOKTING & SHLACTER, P.C.
23   209 S. W. Oak, Suite 500
     Portland, Oregon 97204
24
           Attorneys for Plaintiff
25
     Kathleen C. Bricken
26   GARVEY SCHUBERT BARER
     121 S.W. Morrison Street
27   Portland, Oregon 97204-3141

28   / / /


     1 - OPINION & ORDER

J. Michael Jakes
Robert F. Shaffer
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001

Raymond C. Jones
CARR, MORRIS & GRAEFF, P.C.
1120 G Street, N.W., Suite 930
Washington, D.C. 20005

Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff CollegeNET, Inc., filed a Supplemental Complaint in this patent infringement case, following the return of the case to this Court by the Federal Circuit.  The claims raised in the Supplemental Complaint are the original patent infringement claim regarding the '042 patent, a supplemental claim seeking damages for infringement of the '042 patent from June 30, 2003, to the present, and a second supplemental claim seeking enhanced damages for alleged willful infringement of the '042 patent from August 2, 2005 to the present.

Defendant ApplyYourself, Inc., responded with an Answer, Affirmative Defenses, and Counterclaims filed on February 24, 2006, followed almost immediately by an Amended Answer, Affirmative Defenses, and Counterclaims filed on February 27, 2006.  There, defendant raised affirmative defenses of non-infringement of the '042 patent, invalidity, and unenforceability.  Defendant also brought a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and anticompetitive conduct.

In preparation for trial on these claims, the parties stipulated to a narrowing of issues for the trial currently set in late October 2006.  The April 12, 2006 Stipulation effectively

2 - OPINION & ORDER

postpones the resolution of any infringement claim based on an alleged new or modified product introduced by defendant on September 18, 2005 ("the new product"). Exh. A to Mem. in Support of Joint Mtn to Dismiss Aff. Defs. The Stipulation also reflects defendant's voluntary dismissal of the affirmative defenses and counterclaims raised in its Amended Answer. Id.

The parties entered into another Stipulation on May 4, 2006, related largely to the discovery of evidence regarding the new product. Stip. Regarding Certain Post-Sept. 18, 2005 Issues. Following these Stipulations and the granting of the Joint Motion to Dismiss Affirmative Defenses and Counterclaims, the issues for trial in October 2006 were limited to a claim for infringement damages for the period beginning September 10, 2003, to September 18, 2005, and the claim for enhanced damages for willful infringement for the period beginning August 2, 2005, to September 18, 2005.

On May 11, 2006, plaintiff moved to compel certain discovery from defendant. I heard oral argument on the motion and then issued an Order denying the motion on June 15, 2006. Notably, as part of that Order, I analyzed the parties' Stipulations in light of Federal Rule of Civil Procedure 42(b). I concluded that the Stipulations were not compatible with Rule 42(b) because they created the risk of "prejudice to both parties and could result in an incomplete presentation of evidence related to one or the other [of the two issues remaining for trial - ordinary damages for the period of September 10, 2003, to September 18, 2005, and enhanced damages for willful infringement for the period of August 2, 2005, to September 18, 2005]." June 15, 2006 Order at p. 6.

3 - OPINION & ORDER

I then concluded that

> when looking at all the factors in Rule 42(b), the case
> is more easily managed with clear lines of demarcation,
> meaning that the willfulness issue should not be
> bifurcated from the issue of post-September 18, 2005
> infringement by the new product, and that the only issue
> that should be bifurcated and tried in October-November
> 2006, is the issue of ordinary damages for defendant's
> admitted infringement until September 18, 2005.

Id.  Thus, following the June 15, 2006 Order, the single issue remaining for trial in October-November 2006, is ordinary damages for defendant's infringement from September 10, 2003, to September 18, 2005.

Defendant now moves for summary judgment on plaintiff's claim for lost future profits resulting from defendant's pre-September 18, 2005 infringement.  Defendant also moves to strike a report of plaintiff's expert David Maier, Ph.D., and to exclude his testimony from trial.  Alternatively, defendant seeks to extend the discovery deadline to depose Maier.

For the reasons explained below, I grant defendant's motion for summary judgment, I deny defendant's motion to strike, and I grant defendant's alternative motion to extend the discovery deadline to depose Maier.

I.  Motion for Summary Judgment

A.  Standards

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with

4 - OPINION & ORDER

1    the affidavits, if any,' which it believes demonstrate the absence

2    of a genuine issue of material fact." Celotex Corp. v. Catrett,

3    477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

4        "If the moving party meets its initial burden of showing 'the

5    absence of a material and triable issue of fact,' 'the burden then

6    moves to the opposing party, who must present significant probative

7    evidence tending to support its claim or defense.'" Intel Corp. v.

8    Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

9    (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

10   Cir. 1987)).  The nonmoving party must go beyond the pleadings and

11   designate facts showing an issue for trial. Celotex, 477 U.S. at

12   322-23.

13       The substantive law governing a claim determines whether a

14   fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors

15   Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as

16   to the existence of a genuine issue of fact must be resolved

17   against the moving party. Matsushita Elec. Indus. Co. v. Zenith

18   Radio, 475 U.S. 574, 587 (1986). The court should view inferences

19   drawn from the facts in the light most favorable to the nonmoving

20   party. T.W. Elec. Serv., 809 F.2d at 630-31.

21       If the factual context makes the nonmoving party's claim as to

22   the existence of a material issue of fact implausible, that party

23   must come forward with more persuasive evidence to support his

24   claim than would otherwise be necessary. Id.; In re Agricultural

25   Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);

26   California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,

27   Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

28   / / /

5 - OPINION & ORDER

1    B. Discussion

2        As part of its claim of damages for defendant's infringement
3    of the '042 patent from September 10, 2003, to September 18, 2005,
4    plaintiff seeks lost future profits for a period of one year,
5    beginning September 18, 2005.  Generally, plaintiff's theory is
6    that defendant's infringement before September 18, 2005, caused
7    damages not only during the period of actual infringement, but for
8    at least the following twelve months because, according to
9    plaintiff, there is a lack of acceptable non-infringing substitute
10   products offered by third parties, defendant's customers would not
11   likely desire to continue using defendant's non-infringing
12   alternative, and it would take several months for customers to
13   switch to a contract with plaintiff.

14       In support of its future lost profits claim, plaintiff relies
15   on the report of its damages expert William Partin.  Partin's
16   report postulates a claim of $1,174,973 in lost profits on post-
17   infringement applications.  Karnopp Declr. at p. 11.

18       In the report, Partin states that there are five companies
19   offering services that compete in the same market as plaintiff for
20   online applications:  XAP, CollegeBoard, Princeton Review/Embark,
21   Common Application (supplement), and defendant.  Id. at p. 4.  He
22   concludes that neither XAP, nor Princeton Review/Embark are
23   acceptable non-infringing substitutes because plaintiff's experts,
24   in the context of litigation against those two companies, have
25   evaluated the technologies used by XAP and Princeton Review/Embark
26   and have concluded that they are in violation of at least some of
27   plaintiff's patent claims.  Id.

28       Partin also explains the reluctance of institutional clients

6 - OPINION & ORDER

1   to change existing application service providers and why it will be
2   a gradual process to convert clients to plaintiff from defendant.
3   Id. at pp. 6-7.   Finally, Partin explains why it is unlikely
4   defendant could design around the features of the '042 patent and
5   create an acceptable non-infringing substitute product.   Id. at p.
6   8-10.

7       Upon a finding of infringement, the patentee is entitled to an
8   award of damages, adequate to compensate it for the infringement,
9   but in no event less than a reasonable royalty.   Oiness v. Walgreen
10  Co., 88 F.3d 1025, 1029 (Fed. Cir. 1996).   The patent owner bears
11  the burden of proving this amount.   Id.   "Beyond a reasonable or
12  established royalty, . . . a claimant must prove actual damages to
13  establish entitlement to lost profits."   Id.   This proof must
14  include "a causal connection between the infringement and the lost
15  profits."   Id.   That is, "[t]o recover lost profits as actual
16  damages, a patent holder must demonstrate that there was a
17  reasonable probability that, but for the infringement, it would
18  have made the infringer's sales."   Id. (internal quotation
19  omitted).

20      The law recognizes that a patentee may "produce sufficient
21  evidence to recover projected future losses[.]"   Id. at 1031. But,
22  "those projections must not be speculative."   Id.   As the Oiness
23  court explained:

24          The burden of proving future injury is commensurately
            greater than that for damages already incurred, for the
25          future always harbors unknowns. . . . While estimates of
            lost future profits may necessarily contain some
26          speculative elements, . . . , the factfinder must have
            before it such facts and circumstances to enable it to
27          make an estimate of damage based upon judgment, not
            guesswork.
28

7 - OPINION & ORDER

1   Id. (internal quotations and citations omitted).

2       Defendant argues that the claim for lost future profits
3   exceeds the April 12, 2006 Stipulation where plaintiff agreed not
4   to seek any damages based on defendant's new product.

5       I disagree with defendant that the lost future profit claim
6   necessarily violates the April 12, 2006 Stipulation.   It is
7   possible that a certain number of post-September 18, 2005
8   applications processed by defendant would not have been so
9   processed "but for" defendant's infringement of the '042 patent
10  before September 18, 2005.

11      But, there may also be a certain number of post-September 18,
12  2005 applications processed by defendant with its new product that
13  are not attributable to defendant's infringement.   If defendant's
14  client continues to use defendant to process applications after
15  September 18, 2005, it is possible the client is using defendant
16  because of the pre-existing relationship, cultivated on the basis
17  of an infringing product.   But it is also possible the client is
18  using defendant because of defendant's new product.

19      The problem with plaintiff's future lost profit claim is that
20  there is no rational way for the jury to approximate how many of
21  the applications processed by defendant after September 18, 2005,
22  were because of the pre-existing relationship or because of
23  defendant's new product.   Because any damages for applications
24  processed after September 18, 2005, that were not attributable to
25  a relationship established during the period of infringement, would
26  violate the parties' agreement, and because it is impossible to
27  rationally segregate such damages, it is inappropriate for
28  plaintiff to proceed with its future lost profit claim in the trial

8 - OPINION & ORDER

1   set for late October 2006.

2       At all times, this Court has intended to try, in October 2006,
3   all claims and counterclaims raised by the parties' pleadings.  The
4   parties then entered the April 12, 2006 Stipulation which narrowed
5   the issues for trial to ordinary damages for infringement for the
6   period September 10, 2003, to September 18, 2005, and to a short
7   period of enhanced damages for alleged willfulness from August 2,
8   2005, to September 18, 2005.  I further narrowed the issues to only
9   ordinary  damages  for  the  approximate  two-year  period  of
10  infringement ending September 18, 2005.

11      Because, under the April 12, 2006 Stipulation, the claim for
12  post-September 18, 2005 infringement based on defendant's newly
13  introduced product was not dismissed, but was only bifurcated and
14  postponed  to  a  later  date,  there  remains  the  potential  for
15  confusion and the possibility of a double recovery.  If plaintiff
16  is awarded damages now for post-September 18, 2005 applications
17  that could be attributable to defendant's new product and not its
18  pre-existing relationship with its clients, plaintiff could recover
19  those same damages in the later new product infringement trial.

20      The more appropriate course is to limit this trial to pre-
21  September 18, 2005 damages.  This eliminates any possibility of
22  confusion and double recovery by plaintiff.  Plaintiff may seek
23  lost  future  profits  based  on  the  pre-September  18,  2005
24  infringement, at a second trial at a later date.

25  II.  Motion to Strike

26      As noted above, plaintiff intends to offer Partin's expert
27  report and testimony to support its claim for damages for September
28  10, 2003, to September 18, 2005.  As also noted above, one aspect

9 - OPINION & ORDER

1   of Partin's testimony includes his opinion about the number of
2   acceptable non-infringing substitute products on the market during
3   the relevant time period.    Partin's report makes clear that his
4   opinion is based on the fact that another expert has already
5   determined that at least two of plaintiff's and defendant's
6   competitors, Princeton Review/Embark and XAP, infringe the '042
7   patent and thus, are not acceptable non-infringing substitutes for
8   the purposes of a lost profits analysis.

9       David Maier, Ph.D., is the expert who opined on the
10  infringement of the '042 patent by Princeton Review/Embark and XAP.
11  Plaintiff seeks to submit Maier's report and have him testify at
12  the October 2006 trial regarding the infringement by these third
13  party products.    Defendant objects.

14      Defendant moves to strike Maier's report and anticipated
15  testimony based on Federal Rule of Evidence 403 and the April 12,
16  2006 Stipulation.    Defendant does not contend that the issue of
17  acceptable non-infringing third-party products is irrelevant to
18  plaintiff's claim of lost profits.    But, defendant contends,
19  plaintiff should not be allowed to present evidence on this issue
20  via an independent infringement expert.    Rather, defendant argues,
21  plaintiff should rely solely on the testimony of Partin, the
22  damages expert.

23      I disagree.    Defendant concedes the relevance of the issue
24  upon which Maier will offer testimony.    As plaintiff notes, the
25  presence or absence of acceptable non-infringing substitutes is one
26  of the factors listed in Panduit Corporation v. Stahlin Brothers
27  Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978), as relevant
28  to a lost profits analysis.    In Rite-Hite Corp. v. Kelley Co., 56

10 - OPINION & ORDER

1   F.3d 1538, 1545 (Fed. Cir. 1995) (en banc), the Federal Circuit re-
2   articulated the test from <u>Panduit</u> and noted that the test requires
3   the absence of acceptable non-infringing substitutes as one of its
4   four factors in support of a lost profits claim.  Additionally, as
5   plaintiff notes, the availability or absence of non-infringing
6   alternatives is also relevant to the hypothetical negotiation for
7   a reasonable royalty analysis.

8        Defendant cannot dictate plaintiff's trial strategy or witness
9   list, assuming plaintiff follows applicable rules of procedure and
10  evidence and comports with the parties' agreements, and assuming
11  the witness is otherwise qualified.  Here, with defendant's
12  concession that the issue is relevant, and with its concession that
13  Partin may appropriately testify to the absence of non-infringing
14  substitute products, there is no basis on which to strike Maier's
15  report or testimony.

16       As to defendant's Rule 403 arguments that Maier's testimony on
17  the issue will result in undue prejudice and create a burden of
18  having a mini-trial on the infringement of each of the two third-
19  party products, the same alleged prejudice and burden will exist
20  whether it is Partin or Maier presenting the evidence on that
21  issue.  While Maier's report and testimony will be more
22  comprehensive on the issue of infringement by the third-party
23  products, Partin's testimony, by relying on Maier's opinion, may
24  well cause the same alleged prejudice and burden.  The concerns are
25  not unique to Maier as a witness.

26       Additionally, the agreement between the parties eliminated the
27  affirmative defenses and counterclaims and the issue of
28  infringement by defendant's new product.  The question of what

11 - OPINION & ORDER

damages plaintiff was owed for the period of stipulated infringement by defendant from September 10, 2003, to September 18, 2005, has remained in the trial at all times since plaintiff filed its Second Amended Complaint. Maier's report and testimony are directed to that damages analysis and his testimony is not an opinion on the infringement of the '042 patent by defendant post-September 18, 2005 allegedly infringing product. Thus, his testimony does not violate the parties' agreement.

Accordingly, I deny the motion to strike Maier's report. I do however, grant defendant's alternative motion to extend the discovery deadline to allow for defendant to depose Maier. The parties shall promptly schedule the deposition at a mutually convenient date.

CONCLUSION

Defendant's motion for summary judgment on the issue of lost future profits (#594) is granted. Defendant's motion to strike (#602) is denied but its alternative motion to extend the discovery deadline to allow for the deposition of Maier, is granted.

IT IS SO ORDERED.

Dated this __30th__ day of __August__, 2006


_____/s/ Dennis James Hubel_____
Dennis James Hubel
United States Magistrate Judge

12 - OPINION & ORDER